GRIGG, appellant, and LANDIS, respondent.

1. Penalties, forfeitures, and securities for conditions broken, are not favored in equity. They are usually held to be securities for the payment of money, and the performance of conditions, when compensation can be thus made.

2. Covenants contained in deeds and agreements, prescribing the mode in which the premises shall be improved, and in restraint of their use, will be sustained, within reasonable limitations.

3. Time may be made of the essence of a contract in equity by the express stipulations of the parties, or it may arise by implication from the nature of the property, or the avowed objects of the seller or the pur-·chaser.

4. Circumstances inconsistent with an intention to enforce a strict compliance, such as proceeding with the purchase after an actual and complete breach, will be construed as a waiver.

5. A knowledge of the breach before waiver will be presumed, where the facts shown are such that the party should be charged with notice in favor ·of equitable rights consequent upon such supposed waiver.

6. Where time is of the essence of a contract, the party having the option ·to insist must make the point promptly, before other equities·intervene.

7. A collateral covenant restraining the assignment of an agreement will not be enforced in equity, where it appears in the contract that such re-·straint is but an incident to the objects of the principal covenants which have been substantially performed.

The opinion of the Chancellor is reported in 4 *C. E. Green* 350.

*Mr. Browning* and *Mr. Carpenter*, for appellant.

'This is a bill for the specific performance of a contract of ;sale, made September 1st, 1864, by which Charles K. Landis agreed to sell to one Samuel K. Foster, ten acres of land, at Vineland, in this state. Foster to pay therefor $420, in installments, with stipulations in the agreement on the part ·of Foster, to plant shade trees in front of the property before :the first day of November following, to erect on it a habitation ·within one year, to cultivate two and a half acres each year, .to keep the sidewalk in front clear of underbrush, &c. And

it was further provided, that in the event of Foster not complying with the above stipulations within the time specified, Landis to have the right to take back the land on repaying the amount received on the purchase. It was also stipulated that Foster should not have the right to assign before the above improvement stipulations were complied with, or unless, in case of failure, Landis should decline to take the purchase back, and refund the money received. The object of these stipulations being declared to be to secure the general improvement of the settlement, and to protect it against the speculation of non-improvers, &c. Further, the road-side to be seeded to grass within two years, and the agreement not to be assignable unless all installments due are paid. Warrantee deed to be given when the purchase money should be paid, and the improvement stipulations complied with.

Foster entered into the possession of the lot sold, after payment of a part of the purchase money only, but before the payment of the whole, and, before performing all the improvement stipulations, on 23d October, 1865, assigned and sold his interest under this agreement to Thomas Grigg. Thomas Grigg paid the whole of the purchase money not paid by Foster, to Landis before it became due. He performed all the improvement stipulations, including the erection of a dwelling-house on the premises, at an expense of $1000, but not within the time prescribed. The house should have been built in one year, and before September 1st, 1865, but it was not fully completed until 1st January, 1866.

On March 13th, 1866, Landis, by a letter directed to Foster but delivered to Thomas Grigg, declared the agreement forfeited for non-compliance with the covenants. This was on the ground that the covenants were not strictly performed within the precise time limited, and because Foster had sold and assigned his interest in the land before the improvement stipulations had been fully complied with.

The complainant insists in this case that these stipulations as to time, are not so of the essence of the contract as that

if not strictly performed within the precise time, such failure will of itself work a forfeiture of the contract. These stipulations are good as a means of enforcing payment, and also the performance of the improvement stipulations, and they will not be held, under ordinary circumstances, as grounds of forfeiture. There are cases in which, under such stipulations, courts have refused to enforce specific performance, not on the broad ground here taken, that *time* in such cases is of the essence of the contract, but on account of the unreasonableness of the circumstances under which relief was asked. Such are the cases cited in the opinion delivered below. *Benedict* v. *Lynch*, 1 *Johns. Ch.* 370; *Smith* v. *Wells*, 7 *Paige* 22, 24.

The injustice which may be done to purchasers under the strict rule laid down in the opinion of the court below, may be the better appreciated by referring to the character of the sales made in the settlements now in progress in the southern part of New Jersey. Many thousand acres are being continually sold under these agreements, the vendors securing the payment of the purchase money agreed upon by withholding the deeds until the payments are completed and the improvement stipulations performed. If the purchasers are to lose all the money expended in improvements, by the failure to comply strictly with the stipulations as to time, the vendor, after the increased value given by the vendee, and the rise of value from the general improvement of the neighborhood, may increase his profits by a severe enforcement of the letter of his contract, without any opportunity of redemption given to the debtor. That this fear is not baseless, is seen in the statement of the clerk of Landis, that they had paid back to purchasers since the 21st September, 1865, when Mr. Landis began his work of confiscation, between $40,000 and $50,000 on forfeited agreements. This account is given on the part of Landis himself. What an amount of distress and anguish is involved in this course on his part.

The doctrine, on the other side, that these stipulations are

to be taken as strict conditions, failure as to which in time merely, will not merely justify a delay in the delivery of the deed till the contract is fully performed, but the absolute forfeiture, places probably half of such holders at the mercy of Landis.

As to the claim against assignment, it stands, we suppose, on the same footing. The general doctrine as to this question of strict performance, is stated by Story in 2 *Eq. Jur.*, §§ 1315, 1316.

We had, before the decision of this case below, considered that such stipulations could not be causes of forfeiture, *simply* because not performed strictly within the time prescribed. We say *simply*, because there may be circumstances which will make it inequitable to ask for specific performance. The cases cited in the opinion below we take to be of this character.

Such stipulations are in reality intended for and ought to be treated as a means of enforcing performance of what is undertaken; they are conditions precedent to the right to demand a deed, whether for the payment of money, or for the performance of improvement stipulations. In this light the transaction is in the nature of a mortgage; a pledge of the property in the hands of the vendor, and the principle applies that once a mortgage always a mortgage. A mortgage cannot, by agreement, be made irredeemable. *Coote on Mortgages p.* 11, (*Law Lib. ed.* 1840); 4 *Kent* 142 (*5th ed.*) ; 2 *Story's Eq. Jur.*, § 1019 ; 3 *Lead. Cas. in Eq. (Amer. notes) p.* 75 ; *Youle* v. *Richards, Saxt.* 535, 537–8 ; *Edgerton* v. *Peckham,* 11 *Paige* 352, 357, 362 ; *Remington* v. *Irwin,* 2 *Harris* 143 ; *Taylor* v. *Longworth,* 14 *Peters* 172.

If vendor sees vendee make improvements and does not demand a strict performance of the contract, equity will not enforce a forfeiture, but will decree a conveyance. Standing by and observing work done, as a house built, and then attempting to confiscate, was a fraud. *Farley* v. *Vaughn,* 11 *Cal.* 227 ; *Townsend* v. *Lewis,* 35 *Penn. State Rep.* 125 ; *Murphy* v. *Lockwood,* 21 *Ill.* 611.

Time is not generally of the essence of the contract. *Fry on Spec. Perf.* *312; 2 *Story's Eq. Jur.*, §.1323; *Harris* v. *Troupe*, 8 *Paige* 423; *Falls* v. *Carpenter*, 1 *Dev. & Bat.* 237; *Young's Adm'r* v. *Rathbone*, 1 *C. E. Green* 224.

The cases cited in the opinion below are entirely consistent. The case of *Benedict* v. *Lynch* (1 *Johns. Ch.* 370), stands upon its special circumstances and rightly decided. Of the case of *Smith* v. *Wells*, (7 *Paige Ch.* 22), the same applies. The Chancellor in this case intimates the true ground, when he says that when inequitable the court will relieve against a stipulation making time of·the essence of the contract. There no money had been paid or expended in building, and no circumstances addressed themselves to the conscience of the court to induce it to relieve the purchaser. Here, not only the money has been paid, but a large expenditure in improvements. It seems to us to be a monstrous proposition, that the purchasers shall be called on to make improvements through periods of time, more or less, and that if not completed within the precise time the moneys expended shall be forfeited.

The acceptance of the final payment after the work had been done out of time, was necessarily a *waiver of time.*

Lastly, as to the matter of assignment. It really depends upon the same questions already discussed, with, we suppose, the point, that all such restraints are against the policy of the law, and void.

Any estate or interest in land may be assigned, as an agreement in writing to convey land, which may be enforced by bill for specific performance. 4 *Greenleaf's Cruise* *89; *Currier* v. *Howard*, 14 *Gray* (*Mass.*) 511; *Fry on Spec. Perf.* *51.

Grigg here stands in the place of Foster, and may file the bill in his own name. He might, under our statute, even bring suit at law in his own name, if his proper remedy was there. See act March 14th, 1863, *Nix. Dig.* 613, *pl.* 25 (*ed.* 1868).

The right to limit the assignability of contracts applies to

other subjects.   It is, 1.  When the contract is personal, as to paint a picture, &c.   2.  In the cases of *leases*, when the responsibility and personal character of the tenant enters into the contract.   It is obvious that such reasons fail in this case.

The distinction between a purchase and a lease was taken in the case of *Weatherall* v. *Geering*, (12 *Ves.* 504), where it is said : " In the case of a purchase there is no conveyance without the money, and it is indifferent to the vendor from whom he receives it ; but the relation of landlord continuing, there are many circumstances which it is very important for the lessor to consider."

*Mr. J. T. Nixon* and *Mr. C. Parker*, for respondent.

The opinion of the court was delivered by

SCUDDER, J.

Upon bill filed by the appellant for the specific performance of a contract to convey lands, entered into between the respondent and Samuel K. Foster, and assigned to the appellant, the Chancellor has decreed that the bill be dismissed with costs, and an appeal has been taken to this court.

This contract, dated the 1st day of September, 1864, for a money consideration, and upon compliance with the covenants therein contained, bargains for the sale and purchase of a lot of land, containing ten acres, in the Vineland tract, Cumberland county.  The money consideration is the sum of $420, payable as follows :  $50 cash ;  $270 on September 5th ;  a note for $51.50 at six months ;  and balance of $50, by yearly payments, within three years, with six per cent. interest, payable yearly, on the 1st day of November.

The covenants to be performed by Foster, were : (1) to plant shade trees in front of the property, before the 1st day of May, or November, next following ;  (2) to erect a habitation thereon, for purposes of occupancy, within one

year from the date of the contract; (3) to cultivate at least two and a half acres each year, from the date thereof; (4) to keep the road or sidewalk in front of said property, clear of underbrush or rubbish.

"And in the event of the said S. K. Foster not complying with the above stipulations within the time specified, the said Landis to have the right to take back the said land by paying to the said S. K. Foster the amount he (Landis) has received on account of said purchase." Foster was not to have the right to assign said land, or any part thereof, before the above improvement stipulations were complied with, or unless, in case of failure or inability to make said improvements, said Landis should decline to take the purchase back by refunding the money he had received upon the same. The object of these stipulations, as therein stated, was to secure the general improvement of the settlement, and to protect the same against the speculation of non-improving people upon those who improve their lands.

Following the above statement, it is stipulated that the houses shall be at least seventy-five feet from the side of the road ; that the side of the road in front of said land shall be plowed and seeded to a good seeding of grass, within two years; that this agreement is not assignable unless all installments fallen due are paid.

A warrantee deed, in fee simple, clear of all encumbrances, was to be given when the purchase money was paid, and the above improvement stipulations complied with, and not before ; all the stipulations therein contained were to run with the land, and be of binding force; and in default of complying with said stipulations, to forfeit to the said Landis, or his assigns, $50 per annum.

I shall not stop to criticise or attempt to construe in all its parts a paper so inartificially drawn. The general intent and the more important parts are sufficiently intelligible for our present purpose.

The appellant, Thomas Grigg, on the 4th day of January, 1866, paid the balance of purchase money to Charles K.

Landis, and received a receipt in full, in Foster's name, and on his account, as Landis' agent supposed. About the 1st day of March, 1866, and between that day and the 13th day of the same March, Mr. Grigg demanded a deed for the above tract of land in his own name, alleging that all the purchase money had been paid, all the improvement stipulations complied with, and that the contract had been assigned to him by Foster. The deed was refused. Grigg had been in actual possession of the property from the date of the contract (as the agent of Foster) until the contract was assigned to him, and afterwards, as he claims, in his own right, to the present time.

Immediately following the demand of the deed by Grigg, March 13th, 1866, Mr. Landis addressed a notice to both Foster and Grigg, stating that he had declared the agreement for the lot "*forfeited for non-compliance with the covenants of agreement.*"

A check was also sent by Mr. Landis' direction to Mr. Foster, for four hundred and twenty dollars, the amount of principal of the purchase money received, which was returned not accepted. On April 23d, 1866, Mr. Landis sent his father to Monson, Massachusetts, where Foster resided, and there tendered him the same amount in United States legal tender notes. Foster made no objection to the kind of money, but refused to accept, and said he had contracted with the appellant, Grigg, for the land. He had actually assigned the contract, by writing, endorsed October 23d, 1865.

No tender was made to Grigg of the money. The issue thus made between the parties is whether the respondent has the right to declare the contract of sale forfeited for the alleged non-compliance with the covenants contained therein, and refuse a specific performance by executing a deed for the premises to the appellant.

Penalties, forfeitures, and re-entries for conditions broken are not favored in equity, and constitute a large branch of equitable relief. Usually, they are held to be securities for

the payment of money, and the performance of conditions, and where compensation can be made for non-payment and non-performance, equity will relieve against the rigid enforcement of the contract. This is upon the general principle that a court of equity is a court of conscience, and will permit nothing to be done within its jurisdiction which is unconscionable. 2 *Story's Eq.*, §§ 1314, 1315, 1316, 1323 ; *Livingston* v. *Tompkins*, 4 *Johns. Ch.* 431.

But it is not therefore to be supposed that a court of equity will lightly dispense with contracts made between competent parties, and substitute other agreements more in accordance with variable rules of right and conscience. Every presumption will be made in favor of such contracts, and they will be enforced according to the intention of the parties expressed and implied, unless it can be shown that thereby some hardship or wrong, not within the presumed contemplation of the parties at the time, will result from such enforcement.

In this case it was competent for the parties to make just such an agreement as they have made, and it is our duty to interpret it as they have made it. The covenants for certain improvements do not violate any rule of law; such covenants contained in deeds of conveyance prescribing the mode in which the premises shall be improved, in restraint of the use that shall be made of them, have been sustained where the restriction is confined within reasonable bounds, and the party in whose favor they are made, or those in privity with them, are interested in the subject matter of the restriction. *Whatman* v. *Gibson*, 9 *Sim.* 196 ; *Western* v. *MacDermot, Law Rep.* 1 *Eq. Cas.* 499 ; *S. C.*, 2 *Ch. App.* 72 ; *Mitchell* v. *Steward, Law Rep.* 1 *Eq. Cas.* 541 ; *Brewer* v. *Marshall,* 3 *C. E. Green* 337 ; *Barrow* v. *Richard,* 8 *Paige* 351.

Mr. Landis was the owner of a large tract of land, in the Vineland tract. For his own profit, and to illustrate some peculiar schemes of his own devising for the moral and so-cial development of a colony settled upon his land, in which

the methods of improvement and ornamentation seem to have entered, he put certain stipulations in his contracts for the sale of such land, and when the purchasers signed them they became bound thereby. His objects were lawful, and the result in building up a city, and bringing together a population of seven thousand persons in a short time, shows that he has planned well, and prospered in his undertaking.

In construing this agreement in the light of these circumstances, the Chancellor was undoubtedly right in holding that time is of the essence of this contract, both on account of its nature, or subject matter, and also by its express stipulations.

Time may be made of the essence of a contract by the express stipulations of the parties, or it may arise by implication, from the very nature of the property, or the avowed objects of the seller or the purchaser. When it thus appears, it will be considered essential in equity. 1 *Sug. on Ven. and Pur.* 433*; *Young* v. *Rathbone,* 1 *C. E. Green* 224; *Longworth* v. *Taylor,* 14 *Pet.* 172; *Hipwell* v. *Knight,* 1 *Younge & Coll., Eq. Ex.* 415; 1 *Story's Eq.,* § 776; 3 *Lead. Cas. in Eq.* 75; *Fry on Spec. Perf.,* § 710.

It was of great importance to Landis that actual settlers should buy, and that improvements should be promptly made as inducements to others to purchase and improve, and this intention is expressed in the agreement and in the times limited. The time for planting shade trees, "before the 1st day of May or November next following;" the erection of a habitation for the purpose of occupancy "within one year from the date hereof;" at least two and a half acres should be cultivated "each year from the date hereof;" these are all specified with particularity as to time, and the purpose is manifest.

It is further expressed, that in the event of the said S. K. Foster not complying with the *above* stipulations within the time specified, the said Landis *shall have the right to take back the said land by paying to the said S. K. Foster the*

*amount he has received on account of said purchase.* This right to reclaim the property at the expiration of the time named for non-performance of these covenants, is decisive in determining the materiality of time in this case.

This construction being settled, the testimony in the case shows that there was a breach of these conditions on the part of the purchaser.

The shade trees were not planted until some time in the month of November, 1865, instead of before the first day; the house was not built until January 1st, 1866, instead of before September 4th, 1865; and none of the other improvements appear to have been made within the time specified. But Foster was in possession of the property under the agreement, and had made his payments at or very near the times stipulated, and such payments had been received by Landis. After the breach of these improvement stipulations, to wit, on the 31st of October, 1865, a further payment was made and received, and again on the 4th day of January, 1866, the balance of the purchase money was paid, received, and a receipt given in full. Before the last payment was made the dwelling-house had been built, costing about $1000, two and a half acres of land had been cultivated, and trees had been planted upon the road in front of the lot. Before the deed was demanded, on the 13th of March, 1866, the underbrush had been cut in front of the property, and it had been plowed and seeded. It appears that some of the trees died, others had been planted, and that neither the trees nor the clearing and seeding are satisfactory to Mr. Landis. But there is no particular description given in the contract, and it does not sufficiently appear in the testimony that there has been bad faith, or a failure to comply substantially with these improvement stipulations. These are all important considerations upon the application to give effect to this contract by a specific performance.

After a careful review of the cases, I can find none where

a court of equity, under such circumstances, has refused to give relief.

In the case of *Benedict* v. *Lynch*, 1 *Johns. Ch.* 370, it was held that on default at the day, without any just excuse *or any acquiescence or subsequent waiver* by the other party, the court will not help the party in default. The purchaser had been in possession and made improvements, but made no payments and no tender of performance until two years after the appointed time. The learned annotators in 3 *Lead. Cas. in Eq.* 81, say, that while this case is generally admitted to be sound upon the point that time was of the essence of the contract, yet as the complainant had gone into possession of the premises, and built a house, which repelled the idea that the delay was due to an abandonment of the contract, or a design to speculate on the defendant, the decision would seem to be somewhat questionable on the latter point.

In the case of *Wells* v. *Smith*, 7 *Paige* 22, where it was held that the parties had made the payment at the day an essential part of the contract, and that the vendee, who had not attempted to build the house upon the lot, and who had, without a legal excuse, failed to make the payment at the time specified, was not entitled to a decree for a specific performance of the contract. Chancellor Walworth says: "If a vendee, after he had received the greater portion of the purchase money, should attempt to enforce a forfeiture of the money paid, under a stipulation that he might keep the whole amount thus received and the premises also if the last payment was not made on the day, I am not prepared to say that this court would not interfere to compel him either to accept the last payment and convey the premises, or to restore the purchase money already paid, after deducting a reasonable allowance for the use of the premises in the meantime."

Certainly there could be no difference, except the case would be stronger, if the result of the forfeiture were to confiscate valuable improvements made in the premises, in-

stead of the purchase money. In a later case, *Edgerton* v. *Peckham*, 11 *Paige* 355, it was said by Vice Chancellor Gridley, in commenting on *Wells* v. *Smith*, " I cannot forbear remarking in this case, however highly I respect the opinion of the Vice Chancellor of the first circuit, (*S. C.*, 2 *Edwards* 78,) that I considered it as adopting an exceedingly severe rule, and a case which upon the facts disclosed, entitled the complainant to relief." In the same case Chancellor Walworth says: " The case of *Wells* v. *Smith*, was entirely different from this. There the performance of the condition precedent on or before the particular day specified, *was essential to the vendor's security*," and " there was in fact no forfeiture except the loss of a profitable speculation."

Both of these cases, which show the extent to which courts of equity have gone in refusing relief, differ essentially in the very point of decision from this case now under consideration. Here everything had been done substantially, upon which the right to annul could be predicated, except the default as to time, and that had not been insisted upon, but the parties had proceeded after the breach. Even where time is of the essence of the contract, it may be waived by proceeding in the purchase after the time has elapsed. *Story's Eq.*, §§ 776, 1025 a.

In *Hipwell* v. *Knight*, 1 *You. & Coll. Eq. Ex.* 401, Baron Alderson, speaking in a case where time was the essence of the agreement, says: " The result of all the cases on this subject seems to be, that slight circumstances are sufficient in a court of equity to prevent a party from taking the benefit of such a stipulation, and that whenever a party has done any act inconsistent with the supposition that he continues to hold his opponent strictly to his part of the agreement, he is to be taken to have waived it altogether." See also *Seton* v. *Slade*, 7 *Ves.* 265, *and notes;* 3 *Lead. Cas. in Eq.* 49.

There are such inconsistent acts on the part of the vendor in this case.

In the first place he has accepted two payments, the last in full of the balance of purchase money, after default in making improvements at the time fixed.

The acceptance of rent will defeat the right to proceed for a forfeiture previously committed. *Arnsby* v. *Woodward*, 6 *B. & C.* 519; *Bowser* v. *Colby*, 1 *Hare* 130.

Will not the acceptance of the purchase money after default in this case have the same effect? I can see no difference. This is not like the case of a continuing breach of covenant, which is not waived by the acceptance of rent, but it is the case of an actual and complete breach before the implied waiver, and is therefore conclusive. *Baker* v. *Jones*, 5 *Ex.* 498; *Camp* v. *Pulver*, 5 *Barb. S. C.* 91; *Clarke* v. *Cummings*, *Ibid.* 340.

It is no answer to say that Mr. Landis did not know that the improvements were not made when he accepted these payments after default. From the facts and circumstances of this case, his knowledge and oversight of the business of the Vineland tract, the exact system observed by him, and the agencies employed, he must be presumed to have known where equitable rights are in question. (2 *Lead. Cas. in Eq.* 163). He might have known, and he was bound to know, if he intended to insist upon the forfeiture. The purchaser had the right to suppose that he did know, and waived the default.

From Mr. Landis' testimony it appears that the purchaser might reasonably believe that he acquiesced in the delay, for he had been indulgent in other cases. He says : " When an honest disposition was manifested to make the improvements by the purchaser, I would sometimes allow the improvements to be made, and change the penalty mentioned in the contract." He had not, therefore, been exact in holding parties to compliance at the very day. But the trouble here was, that Foster had assigned to Grigg, without his, Landis' knowledge, and this had changed his usual course and disposition; of this I will speak hereafter.

In a case somewhat similar in facts, *Harris* v. *Troup*, 8

*Paige* 423, it was said that it was inequitable, after the vendor had waived the forfeiture from time to time, by receiving portions of the purchase money long after the same were due and payable, to suddenly stop short and insist upon a forfeiture, without any previous intimation that he intended to do it.

Mr. Landis gave no intimation or notice that he intended to forfeit the contract because the improvements were not made at the time agreed upon. What would have been the practical effect if he had done so promptly? He could return all the purchase money he had received, and the parties would have been in *statu quo*. No loss would be incurred, except to the purchaser a probable speculation in the value of the lot bought. By neglecting to give such notice promptly, the purchaser has been permitted to build a house, and make other improvements amounting to one thousand dollars. To. forfeit the property after this has been done, is to permit the vendor to take advantage of his own wrong, and add the amount of these improvements to his large wealth, and take it from the purchaser, who has acted upon the fair presumption from his silence, that he would not insist on the forfeit. This cannot be equitable. There are intervening equities which cannot be taken away under such circumstances.

It is said, however, that Grigg knew when he took the assignment of the contract, that the time for performance had passed, and therefore he took it with the risk of being ousted and losing his improvements. Suppose he did know of the default. He also knew that Mr Landis had given intimation or notice of an intention to forfeit the contract, and upon this he had the right to act.

In *Hunter* v. *Daniel*, 4 *Hare* 420, where it was held that time was of the essence of the contract, it was said, that "each breach gave the defendant the right to rescind the contract, but that right should have been asserted the moment the breach occurred. The defendants were not at liberty to treat the agreement as still subsisting and to take

the benefit of it at the expense of the plaintiffs. If they meant to insist it was at an end, they were at liberty to do so, but were not imperatively bound to do so. The defendants had no right to accept the money, but upon the principle that the agreement was still subsisting." And in *Monro* v. *Taylor*, 8 *Hare* 51, it was held that if time is to be considered of the essence of a contract, the point must be made promptly.

Such it appears to me is the import of the terms used in this contract: "In the event of the said S. K. Foster not complying with the above stipulations within the time specified, the said Landis to have the right to take back the said lands," &c. He has a right, the exercise of which is optional with him, and for his benefit. *Cartwright* v. *Gardner*, 5 *Cush.* 273. The time to evoke it is when the default occurs. To manifest his intention some act must be done, some notice given, because the agreement does not become void upon the happening of an event, or the expiration of a fixed time, but it is voidable upon the volition of the vendor expressed in a particular way, by the repayment of the money which he has received before the default. He has made no expression of this determination, but has been quiet, and permitted the condition of the opposite party, and of the property, to become changed; and has not only been quiet, but has done other acts by which he is precluded in equity from asserting his former right to annul the contract.

But it is evident that the points I have been considering are not those which have incited the respondent to the resistance of this claim for a conveyance. Neither the time that had elapsed, nor the delay or defects in the improvements, now set up, are so considerable as to induce him to refuse the deed. Had Foster remained the party to whom the conveyance was to be made, it is not probable that any default would have been insisted upon. The great point of objection is the assignment to Grigg, the appellant. He says: "Had I ever been aware of the assignment made

by Foster to Grigg before the house was built, I would have forfeited the bond of agreement, and tendered the money before this improvement was made." "I gave the direction to send the check to Foster after I had learned that the assignment had been made by Mr. Foster to Mr. Grigg, certainly within five seconds; the moment that my book-keeper, Mr. John L. Burke, informed me of the attempted transfer."

It would thus appear that he resented the concealment by Grigg of his interest in the property, in representing himself as the agent of Foster, or permitting others to suppose that he was such agent, when he was really the assignee and principal in the contract after October 23d, 1865. It is not necessary to justify this conduct, or to attempt to excuse it. The facts do not explain it. He owned the adjoining property, and might wish to obtain this, but it was wrong to resort to any artifice to obtain it. But this is not a fraud, unless some fraudulent consequences be shown. It is immaterial, unless it appear that the alleged deception has in some way operated to the vendor's prejudice. *Fellowes* v. *Gwydyr*, 1 *Russ. & My.* 83.

In some cases courts of equity will give effect to a collateral covenant by refusing to decree a specific performance of the principal contract in favor of the party who has obtained his interest in the contract in violation of a collateral covenant restraining an assignment. But it must be under special circumstances. *Flood* v. *Finlay*, 2 *Ball & Beatty* 9; *Nelthorpe* v. *Holgate*, 1 *Collyer* 204. In the latter case there was a secret understanding and assignment. But in a bill for specific performance the court held, that if the price was adequate, and it was not suggested that the vendor had refused, or would refuse, or could have obtained better terms of the assignee had he known the real circumstances, a decree should be made.

But I apprehend such collateral covenant will never be thus enforced, where it appears upon the face of the contract that the prohibition to assign is not the main purpose

of the covenant, but a mere incident to and security for such purpose. It is the province of a court of equity to ascertain what is, in truth, the real intention of the parties, and to carry that into effect. What is the objection to making an assignment of the contract to Mr. Grigg, or any other person, as it appears on the face of the agreement? Not personal, surely. It was not even subject to the approval of the vendor ; he reserved no such right. Nor was it merely arbitrary ; that would be too unreasonable. But the object, as clearly expressed, was to protect the settlement against non-improving speculators ; and it was for this purpose that no assignment could be made, until all the installments of the purchase money should be paid, and especially before the improvement stipulations were complied with. The assignee of this contract is not a nonimproving speculator. He asks for a deed, not before, but after the improvements are substantially made, and the purchase money is paid. When these terms are fulfilled, a warrantee deed, in fee simple, clear of all encumbrance, was to be given to the purchaser by the terms of the contract. And why not to the assignee of such purchaser ? The contract is assignable in equity, and the assignee has all the equitable rights of his assignor, unless restrained by the terms of this covenant. It would be inequitable to make the incident the principal point in the covenant. The main object is attained, as the party has himself expressed it, and the assignment, however it may stand in time between the assignor and assignee, has no effect claimed for it against the vendor, until his terms have been met and satisfied. The only omission is in the point of time, which we have shown above has been acquiesced in by his acts.

I know a different principal has been held in cases of forfeiture for a breach of a covenant not to assign a lease without license, and other collateral covenants relating to leasehold premises, in which no relief will be given ; but the reason stated, that they admit of no adequate compensation, or clear estimate of damages, does not obtain in this case,

where no more than nominal damages would be given. This stands upon another principle, that the restriction is in the nature of a mere security for the performance of the principal covenants, and such relief may be given by a court of equity as shall appear to be equitable under the circumstances of each particular case. 2 *Story's Eq.*, § 1324 ; *Reynolds* v. *Pitt*, 19 *Ves.* 134 ; 2 *Greenl. Cruise* 36, ¶ 29 ; *Skinner* v. *Dayton*, 2 *Johns. Ch.* 535 ; *Henry* v. *Tupper*, 29 *Vt.* 358 ; *Taylor's Land. and Ten.*, §§ 496, 500.

Other reasons which are technical and peculiar to covenants in leases, growing out of the relations of landlords and tenants, and assignees of terms, will be found by reference to Dumpor's case (2 *Coke* 119), and notes in 1 *Smith's Lead. Cas.* 85.

It is evident from the immediate effort of the vendor to rescind the contract when informed of the assignment, that he supposed it was forfeited by any transfer before the improvements were made ; but there is no clause of forfeiture, or re-entry for condition broken in the agreement. Certainly this court will not interpolate a forfeiture. Where there is no clause of avoidance or of re-entry, a breach of the covenant will not work a forfeiture or determination of an interest in lands. *Willson* v. *Phillips*, 2 *Bing.* 18 ; *Bockover* v. *Post*, 1 *Dutcher* 286 ; *Taylor's Land. and Ten.*, § 412 ; *Adams on Eject.* 157.

The usual and proper remedy for such breach is an action for damages, not an eviction. In the interpretation of words used in a contract or deed, the leaning of courts against forfeitures always inclines them to call them a covenant rather than a condition, where the remedy can be attained by such construction. *Aiken* v. *Albany R. R.*, 26 *Barb.* 289. But the restriction upon alienation, whether it be called a covenant or a condition, did not exist after the installments of the purchase money had been paid and the improvements essentially made, and there is no difficulty in giving the assignment effect between all the parties at that time, and affording relief to the appellant.

Mr. Landis gets his purchase money and the incidental advantages of the improvements in the lands sold, which were stipulated for in his contract; and the purchaser holds his land and the amount expended upon it, in the shape of improvements. This appears to be equitable between the parties. Any other determination would lead to serious loss and injury to the appellant. It is true that Mr. Landis has offered very fairly in his answer, to make any just compensation to the appellant for the expenditures and improvements, if the court should be of the opinion that he has any equitable claim on him for the same; but if his position be correct, he is under no legal obligation to make such payment, nor has this court the right to impose such terms upon him.

Considering all the circumstances of this case, as above stated, my opinion is that the appellant is entitled to the relief prayed for in his bill, and a specific performance of said contract, and that the decree of the Chancellor dismissing his bill of complaint should be reversed, with costs on appeal and costs below.

DALRIMPLE, J., dissenting.

This bill is filed to compel the specific performance by Landis, the defendant, of his contract made with one S. K. Foster, to convey certain lands to Foster. A bill for specific performance of a contract invokes the extraordinary jurisdiction of the court, and the relief rests in sound discretion. *Gariss* v. *Gariss*, 1 *C. E. Green* 82. The complainant founds his right to a decree, not upon any contract made by the defendant with him; his rights, if any he has, are as assignee of the defendant's contract with Foster. That contract bears date the 1st day of September, 1864. The defendant agreed to sell, for the consideration of $420, which Foster agreed to pay in certain installments, within a period of three years from the date of the contract. Foster further agreed to make certain improvements "*within one*

*year from the date*" of the contract, and in the event of his not complying with said stipulations for improvement "*within the time specified*," the defendant was to have the right to take back the land by repaying the amount he had received on account of the purchase. The contract further expressly provides that Foster was not to have the right to assign said· land, or any part thereof, before the improvement stipulations were· complied with, unless; in case of failure or inability to make said improvements, Landis should *decline* to take the purchase back by refunding the money he had received upon the same. The object of these stipulations was declared to be to secure the general improvement of the settlement and to protect the same against the speculations of non-improving people upon those who improve their lands. Foster, having wholly disregarded and neglected to fulfill his-stipulations for improvements, on the 23d day of October, 1865, without the knowledge or consent of Landis, assigned the contract to the complainant.

The question which here arises is, whether all rights of Foster under the agreement had not, at the time of the assignment, ceased by reason of his neglect to make the improvements according to his covenants in that behalf. The complainant's contention is; that under this contract the vendee lost no rights by reason of not having made the improvements within the time limited ; that time not being the essence of this contract, it would be inequitable and unjust to allow a forfeiture of the vendee's rights because of his failure or neglect to make the improvements within the year.

The law relating to this subject is comprised in the following extract from the opinion of the court, delivered by Justice Story, in *Taylor* v. *Longworth*, 14 *Pet.* 174 : "There is no doubt that time may be of the essence of a contract for the sale of property. It may be made so by the express stipulations of the parties, or may arise by implication from the very nature of the property or the avowed objects of the seller or the purchaser. And even where time is not thus either expressly or impliedly of the essence of the contract,

if the party seeking a specific performance has been guilty of gross laches, or has been inexcusably negligent in performing the contract on his part, or if there has, in the intermediate period, been a material change of circumstances affecting the rights, interests, or obligations of the parties, in all such cases courts of equity will refuse to decree any specific performance, upon the plain ground that it would be inequitable and unjust. But except under circumstances of this sort, or of an analogous nature, time is not treated by courts of equity as of the essence of ¡the contract, and relief will be decreed to the party who seeks it, if he has not been grossly negligent and comes within a reasonable time, although he has not complied with the strict terms of the contract. But in all such cases the court expects the party to make out a case free from all doubt, and to show that the relief which he asks is, under all the circumstances, equitable, and to account in a reasonable manner for his delay and apparent omission of duty." To the same effect is the case of *Baldwin* v. *Van Vorst*, 2 *Stockt.* 585.

It seems to me quite plain upon the face of this contract that time is material. It is of the essence of this contract, both by express stipulation and from the avowed object of the letter, which was to promote the speedy settlement and improvement of the colony. No excuse for the vendee's default has been so much as suggested. It is not shown that it arose from mistake, accident, want of ability, or even inattention. For anything that appears before us to the contrary, it may have been willful and with design to embarrass the defendant. Under these circumstances, I cannot see on what ground Foster would be entitled to the interposition of a court of equity to save him from the consequences of his breach of covenant. But it is said that the defendant, prior to the assignment to the complainant, waived the forfeiture. The year within which the improvements were to have been made, expired on the 1st day of September, 1865. Fifty-two days thereafter the assignment was made, without anything having been done by the

defendant in the meantime.    It does not appear that between the expiration of the year next after the date of the contract, and the day of the assignment of it, there was any communication or intercourse, directly or indirectly, between Foster, who resided in Massachusetts, and Landis, who resided in this state; nor that Landis knew, or had reason to believe, the improvements stipulated for had not been made.    In my opinion, the vendor did not, by a silence short of eight weeks, waive his legal rights; nor do I think the clause in the contract, giving the vendor the right to take back the land on repayment of the purchase money received, in the event of Foster not complying with the improvement stipulations, in any wise affects the rights of the parties.    The improvements not having been made according to contract, the vendor had the right, within a reasonable time, to demand a rescission of the contract, and a reconveyance or release of the property.    A mere delay of a few days in making this demand did not work a forfeiture of this right.    I cannot, therefore, escape the conclusion, that at the date of the assignment Foster's rights under the contract had ceased, as well in equity as at law, and consequently he had no estate or interest, legal or equitable, which could pass under the assignment.

But assuming that the Court of Chancery could, at the date of the assignment, under the circumstances above stated, according to established principles of equity, have interfered and saved Foster from the legal consequences of his breach of covenant, the next question which is to be settled is whether he had the right to assign his equitable estate to the complainant, so that the complainant can avail himself of the assignment in a court of equity.    The vendee, by the terms of the contract, is restrained from making an assignment of it before the improvements are made, unless the vendee should decline to take the purchase back.    To decline in the sense in which the term is here used, means to refuse by some decisive act of omission or commission. It would be a forced and unwarranted construction of the

contract to hold that the defendant was bound to seek the vendee immediately upon the expiration of the year, and tender the money received on the contract, or be held to have declined to take back the purchase. This is not one of that class of cases in which it is held that a mere omission to perform an act which the party is bound by law, on his agreement, to do, will amount to a refusal. I am not willing to admit the doctrine that a complainant can place his right to recover in a court of equity, upon an assignment made in violation of the plain terms of the contract assigned. To state the case in the simplest form, the complainant here bases his right to relief upon a legal wrong. I have not been able to find any head of equity under which such a title to relief may properly be placed. The complainant asks us to save him a forfeiture. The difficulties in his way are that he does not come into court with clean hands, and has never acquired, as against the defendant, any rights. It appears to me that in order to sustain the complainant's case, we must hold that a contract not to assign is in equity utterly futile, and that it may as soon as made be violated with impunity.

It is not necessary now to determine to what, if any, relief Foster would be entitled, upon the ground that his assignment is a nullity, if he were here seeking aid; it is sufficient for the purposes of this case to say that as between this complainant and the defendant, there is neither privity of estate nor contract.

It was insisted that this covenant, being in restraint of alienation, is void. No case was cited which supports that proposition. A covenant by the vendee, in an agreement for the sale of lands, not to assign his interest in the contract before the stipulations on his part are performed, is not void because in restraint of alienation of real estate, nor is it in contravention of any rule of law or of public policy. The power of alienation is incident to an estate in fee simple, and a condition in the deed wholly preventing the exercise of this power is held to be void, because repugnant to the estate

granted.  1 *Wash. on Real Prop.*, p. 54, § 45; 4 *Kent.* 131;. 21 *Pick.* 42.

A contract for the sale of real property creates no estate at law, and at the common law was not assignable, so that the assignee could maintain an action at law thereon in his own name.

It is insisted that the defendant, subsequent to the assignment, recognized the contract as in existence, and thereby waived all previous forfeitures and breaches of covenant. It is true that the defendant on the 31st October, eight days after the assignment, received a payment of $18.68, and on the 4th day of January next following, a further payment of $34.19, from the complainant; these two payments being in full of the last installment due on the contract; and there is evidence tending to show that some time in the succeeding February or March, the clerks or agents in the defendant's office, expressed a willingness to make a deed, in case the improvements had been made according to agreement, and the complainant has produced evidence which he claims shows that the improvements were made by him within a short time after the assignment. But the fact of the assignment was carefully concealed from the defendant. The complainant made the payments and took the receipts therefor in the name of the vendee, and having suppressed the truth, cannot claim, with any show of justice, the benefit of a recognition of the contract by the defendant, who did not know, and had no reason to believe, that the complainant claimed to occupy the position of assignee. I cannot see how the defendant could recognize the complainant as assignee, until he knew or had reason to believe the complainant had or claimed to have an assignment, nor how there could be a recognition or ratification of the assignment by the defendant, unless he had some knowledge, information, or belief that there was an assignment in existence. I think the defendant had a right to know with whom he was dealing, and who claimed to have the interest in the contract, and that it would be unjust to allow the complainant

to bind the defendant to a recognition of a forfeited agreement, or sanction of a void assignment, by acts done before the defendant knew the true state of affairs. The conduct of the defendant might have been quite different if the truth had not been concealed from him. The complainant's attempt to prove that the defendant or his agents agreed to make a deed to the complainant, is a failure; on the contrary, it appears that as soon as the defendant was advised of the truth of the case, he tendered the purchase money back to Foster, and declined to recognize the complainant as having any interest in the contract. Nor do I see that the claim of the complainant is strengthened by the fact that he made improvements on the property soon after he purchased it. Though he made these improvements with very considerable haste, and immediately after his first payment of $18.68, I am not satisfied from the evidence that he did so in good faith. However this may be, there is no fact or circumstance going to show that the defendant or his agents advised, encouraged, or assented to them, except, it may be, in respect to a very inconsiderable part, made by the complainant before he had disclosed his true position, and while the defendant was under the belief that the complainant was acting on behalf of Foster. If the defendant knew that the improvements were being made, he must have been under the impression that they were the work of his vendee, and not of a stranger. If it be asked if the complainant must lose his improvements, I answer that he occupies the position of one who has improved land without the knowledge, assent, or request of the owner. I know of no power which a court of equity has to give the land of the defendant to the complainant, in order that the latter may secure improvements which he had no right to make.

Though this matter of improvements, under the circumstances, does not change the legal aspects of the case, it may not be amiss to remark that the defendant voluntarily proffers himself, in his answer, as willing to make any just

compensation for the improvements, that to the Chancellor shall seem equitable and just. The complainant, instead of accepting this offer, continued the litigation, and failed in the court below. I think the decision of that court dismissing the bill was right, and should be affirmed.

The decree was reversed by the following vote:

*For reversal*—BEASLEY, C. J., BEDLE, CLEMENT, DEPUE, KENNEDY, SCUDDER, VAIL, VAN SYCKEL, WALES.    9.

*For affirmance*—DALRIMPLE, OGDEN, OLDEN, WOODHULL.    4.