# COURT OF ERRORS AND APPEALS

## JUNE TERM, 1856.

.

---

Between DANIEL A. BALDWIN, appellant, and JOHN VAN VORST, respondent.

As a general rule, courts of equity will not regard time in the performance of a contract. But the parties may make time the essence of the contract, so that the court will not interfere to aid the party who is in default, unless he can offer some good excuse, as mistake or accident, for such default.

---

The bill in this cause was exhibited to foreclose a mortgage, made by Daniel A. Baldwin and Abby Ann his wife, bearing date the first day of October, eighteen hundred and fifty-two, and delivered to John Van Vorst, the complainant, and set forth in the said bill exhibited in this cause. The said mortgage was made to him to secure the sum of money mentioned in a bond made by said Daniel A. Baldwin, and delivered to the said John Van Vorst, the complainant, bearing even date with the said mortgage, which said bond was subject to the following condition : that the said Daniel A. Baldwin, his heirs, executors, or administrators, should well and truly pay, or cause to be paid, to John Van Vorst, the complainant, his executors, administrators, or assigns, the just and full sum of forty thousand dollars, in ten years from the date of the said bond, that is to say, before or on the first day of October, which would be in the year one thousand eight hundred and sixty-two, and the interest thereon to be computed from the date of the said bond, to wit, October first, eighteen hundred and fifty-two, at and after the rate of six per cent. per annum, and to be paid half-yearly,

on the first days of April and October, then the said obligation shall be void, otherwise should remain in full force and virtue.    And the said bond was subject to the further condition, and it was thereby expressly agreed, that should any default be made in the payment of the said interest, or of any part thereof, on any day whereon the same is made payable, as in said bond expressed, and should the same remain unpaid and in arrears for thirty days, then and from thenceforth, after the lapse of the said thirty days, the aforesaid principal sum of forty thousand dollars, with all arrearage of interest thereon, should, at the option of the said John Van Vorst, his executors, administrators, or assigns, become and be due and payable immediately thereafter, although the period limited for the payment thereof may not then have expired, anything therein before contained to the contrary thereof in anywise notwithstanding.    It appeared, by the answer of Daniel A. Baldwin and by the proof in the cause, that on the eighth day of July, eighteen hundred and fifty-three, the said Daniel A. Baldwin offered and tendered to the complainant the interest which had become due on the first day of April, eighteen hundred and fifty-three, and the interest thereon, which tender the complainant refused, and insisted upon the whole money secured by the said bond.

The cause was heard in the Court of Chancery, upon the pleadings and proofs, at the term of February, 1855.

*I. W. Scudder*, for complainant, *Abram O. Zabriskie*, for defendant, Daniel Baldwin.

At the October term of the court, the Chancellor delivered his opinion, and on the 21st day of November, a decree was made in favor of the complainant.    From this decree an appeal was taken.

The Chancellor furnished the court with the following opinion, as containing the reasons for his decree.

WILLIAMSON, C.    Daniel A. Baldwin, one of the defendants, purchased of the complainant a tract of land, lying

in Jersey City in the county of Hudson, for the sum of forty-seven thousand five hundred dollars ; seven thousand five hundred dollars were paid in cash, and to secure the balance Baldwin gave his bond, with a mortgage on the premises, in the penal sum of eighty thousand dollars, with the condition, that if the said Daniel A. Baldwin, his heirs, executors, or administrators, should pay to the complainant, his executors, administrators, or assigns, the sum of forty thousand dollars, in ten years from the date of the said bond, with interest at six per cent., payable half-yearly, then the obligation was to be void. To which condition there was annexed an agreement, in the following words : " And it is hereby expressly agreed, that should any default be made in the payment of the said interest, or of any part thereof, or any day whereon the same is made payable, as above expressed, and should the same remain unpaid and in arrears for the space of thirty days, then and from thenceforth, that is to say after the lapse of thirty days, the aforesaid principal sum of forty thousand dollars, with all arrearage of interest thereon, shall at the option of the said John Van Vorst, his executors, administrators, or assigns, become and be due and payable immediately thereafter, although the period above limited for the payment thereof may not then have expired, anything hereinbefore contained to the contrary thereof in anywise notwithstanding." The first payment of interest fell due on the first day of April, eighteen hundred and fifty-three, and was unpaid when this bill was filed, on the twelfth day of June following. It appears by Baldwin's answer and by the proof in the cause, that on the eighth day of July, 1853, Baldwin offered and tendered to the complainant the interest which had become due on the said first day of April, and the interest thereon and the taxable costs then incurred, which tender the complainant refused, but insisted upon the whole money secured by the bond. The only question presented is, whether the court will relieve the complainant from the

payment of the full amount secured by the bond and mortgage, being forty thousand dollars, upon the payment of the decreed interest and costs.

The jurisdiction of a court of equity to grant relief in cases of forfeitures and penalties for breaches of covenants and conditions is well established. At the common law there is no remedy, and therefore it is that, in cases of penalties annexed to bonds and other instruments to secure merely the payment of a certain debt, the statute has stepped in, and provided adequate relief against the penalty.

Nor does a court of equity, in affording relief, confine itself to cases of fraud, mistake, or accident, however probable it may be that in the origin of this exercise of its jurisdiction, it confined itself within such limits. But it is not imperative in the court to grant relief, although the party in default is willing to render all the compensation in his power to make restoration to the injured party.

There is a discretion in the court, regulated, it is true, by well recognized principles, but exercised in its application of those principles to each particular case by its peculiar circumstances.

In the case of *Sanders* v. *Pope* (12 *Ves. Jr.* 289), Lord Erskine says, "there is no branch of the jurisdiction of this court more delicate than that which goes to restrain the exercise of a legal right. That jurisdiction rests only upon this principle, that one party is taking advantage of a forfeiture, and as a rigid exercise of the legal right would produce a hardship, a great loss, and injury, on the one hand, arising from going to the full extent of the right, while on the other, the party may have the full benefit of the contract, as originally framed, the court will interfere where a clear mode of compensation may be discovered." This principle is everywhere recognized, and runs through all the cases. The injured party must be compensated, and must have the full benefit of his contract. If he cannot be adequately redressed for the

injury which he has sustained, and which has worked the forfeiture, or if, in granting the relief, the court must so alter the contract between the parties as to destroy one of its principal and essential features, and defeat the very object which both parties had in view on annexing a forfeiture or penalty for the breach of its conditions, then the court ought not to interfere between the injured party and his legal remedy ; or, in other words, the court ought not to give relief at the expense and to the injury of the already aggrieved party.

What are the legal rights of the complainant against the enforcement of which the defendant, Baldwin, asks to be relieved ?

Baldwin, for a debt of forty thousand, which he owed complainant, gave him his bond in the penal sum of eighty thousand dollars. The condition of the bond was the common one, that if the obligor paid the debt really due of forty thousand dollars in ten years from the date of the bond, and the interest on the debt semi-annually, then the bond was to be void.

The penalty was double the amount of the debt due, and the object of the penalty was to secure the due fulfilment of the obligation. If this was all the contract, there could be no difficulty as to the legal and equitable rights of the parties. But there was a further condition, in the nature of an agreement, that if the interest money should remain unpaid for thirty days after it was due and payable, then the principal money should be due and payable. The object of this was to secure the prompt payment of the interest on the debt. The first interest money that became due was unpaid, and the thirty days were permitted to expire. The complainant was compelled to file this bill to enforce the payment of his debt. He is entitled, by the terms of his agreement, to have a decree for the full amount of his debt. He has forfeited the credit of ten years, which he was to have on condition of prompt payment. If the court relieves the defendant, it destroys the

3 c*

very object of the agreement to secure prompt payment. The parties have made this the essence of their contract; and when the debt is as large as this one is, prompt payment of the interest is a matter of great consequence. It is true, as was argued, the court might in this case give compensation. Perhaps interest upon interest might be a fair compensation, as near as it may be estimated. But this mode of redress deprives the party of the full benefit of his contract. It will not secure prompt payment in future; and if at the end of another six months another default is made, the defendant may have the same relief, and thus obtain a credit from time to time upon terms entirely different from the agreement between the parties.

If the court grant this relief, the very object of the agreement will be defeated, and this court virtually declare that parties shall not make an agreement by which the length of credit shall depend upon the prompt payment of the interest, as it becomes due. The agreement is a reasonable one. A. says to B., you may have my money for ten years, if you will pay the interest promptly; if you make default in this respect, you must pay me the principal. It cannot be said to be a rigid exercise of a legal right for A. to refuse to extend the credit when he finds he is defeated in his just expectation of receiving his interest money promptly. In 2 *Story's Eq.* it is said, " the true foundation of the relief in equity in all these cases is, that as the penalty is designed as a mere security, if the party obtains his money he gets all that he expected, and all that in justice he is entitled to." In this case the penalty is not designed as a mere security, but its very object is to secure prompt payment. If the party does not get this he does not get what he expects, or all that in justice he is entitled to. If this court could give such relief as would secure the faithful performance of the agreement *in future* there might be a propriety in its interference. If the court could make a decree that the complainant should be relieved in the present instance upon

the terms, that for any further delinquency or forfeiture the further credit should be enforced, this would seem just; and yet, after all, it would be but putting in the shape of a decree of this court, the very agreement which the parties have made, and which the defendant now says is a rigid exercise of its legal right to enforce.

I think the remarks of the Chancellor, in *Benedict* v. *Lynch* (1 *J. C. R.* 376), very applicable to a case like this. The notion that seems too much to prevail (and of which the facts in the present case furnished an example), that a party may be utterly regardless of his stipulated payments, and that a court of Chancery will almost at any time relieve him from the penalty of his gross negligence, is very injurious, to good morals, to a lively sense of obligation, to the sanctity of contracts, and to the character of this court. It would be against all my impressions of the principles of equity to help those who show no equitable title to relief.

As a general rule, courts of equity will not regard time in the performance of a contract. But the parties may make time the essence of the contract, so that the court will not interfere to aid the party who is in default, unless he can offer some good excuse, as mistake or accident, for such default. *Benedict* v. *Lynch* (1 *J. C. R.* 370), and cases there referred to; or where the character of the contract is such that by the payment of money, or otherwise, it has been partly fulfilled, and the default is made under such circumstances as to render it unconscionable to insist upon the forfeiture. *Wills* v. *Smith,* 7 *Paige* 22.

*Edgerton* v. *Peckham* (11 *Paige* 352), was a case where there was an agreement for the sale of a lot of land for $300, one-third to be paid down, and the residue in one and two years, with interest. There was a provision in the agreement, that if the purchaser should make default in either of the payments, the vendor should be discharged from the agreement, and the purchaser forfeit all the previous payments. The first two instalments were paid at

the specified time, and the vendor signed the agreement to the complainant, who made default in the last payment. He was not called upon by the vendor to fulfil the contract, and in a few days after the default he tendered the money and demanded a deed, which the vendor refused to give, and insisted upon the forfeiture. But the court relieved against the forfeiture. The propriety of the court's granting relief in a case like that, commends itself to our natural sense of what is just and right. To insist upon a forfeiture under such circumstances was an act of great hardship and oppression ; it was against good conscience to enforce the agreement as the parties then stood. There is a large number of cases referred to and commented upon by the Vice Chancellor, in *Edgerton* v. *Peckham*, illustrating the principles which govern the court in exercising jurisdiction in reference to contracts, where time is any way material to their performance. But I cannot in this case see any ground for equitable relief. The agreement itself is a reasonable one. Time is the essence of the contract, and there was no hardship in making it so. The agreement is altogether executory, and no act has been done, by either party, to change the position of the parties; so as to make it oppressive in the complainant to call for the fulfilment of the agreement. The defendant offers no excuse for his default, not even that of negligence, or of his inability to raise the money at the day. From anything appearing to the contrary, the default was wilful and without excuse, and intended to harass and inconvenience the complainant by withholding from him his interest money. The defendant made no amends for his default until he was compelled to do so by the complainant's exhibiting his bill in this court. If I relieve the defendant in this case, I must take the ground, that a person cannot make a loan upon condition that the credit shall be a long or a short one, depending upon the promptness of the borrower's paying the interest ; and that if the agreement is that the borrower shall have ten years' credit

if he pays his interest promptly, but a shorter time if he makes default, though he makes default this court will give him the long credit in spite of the agreement. See 3 *Powell on Mortgages* 902; *Stanhope* v. *Manners*, 2 *Eden* 197; *Halifax* v. *Higgins*, 2 *Ves.* 134; *Proctor* v. *Cooper*, *Vann.* 397; *Burton* v. *Slattery*, 3 *B. C. P.* 68; *Sparks* v. *Liverpool Water Works*, 13 *Ves.* 433.

There is a class of cases in reference to leases where the court has interposed to prevent a forfeiture where a right of entry is stipulated in the lease in case of the non-payment of the rent at the regular days of payment. But in those cases the court interferes on the ground, that the right of entry is intended as a mere security for the payment of rent, and that when the rent is paid the end is obtained. *Story's Eq. N. S.* 1315; *Wadman* v. *Calcraft* (10 *Ves. Jr.* 69); *Sanders* v. *Pope*, (12 *Ves.* 284); *Bracebridge* v. *Buckley* (2 *Prior's Ex. R.* 216).

As I have before remarked in this case, the penalty of $80,000 was intended to secure the payment of the principal money. But this additional agreement was intended for another purpose, to secure the prompt payment of the interest to grow due on the debt. If it fails to accomplish this, its only aim and object are frustrated; the intention of the parties is defeated.

I can see no principle of equity to justify the court's interference to give the defendant relief against the forfeiture. The complainant is entitled to a decree for his principal money and interest.

The appeal was argued by

*Zabriskie*, for appellant.

*Gilchrist*, for respondent.

The decision of the Chancellor was affirmed by the following vote:

Baldwin *v.* Van Vorst.

*For affirmance*—CHIEF JUSTICE, Judges ARROWSMITH, HAINES, POTTS, VALENTINE, CORNELISON, HUYLER, RISLEY, WILLS, OGDEN, RYERSON.

*For reversal*—None.

CITED *in Martin* v. *Melville,* 3 *Stock.* 223; *De Groot* v. *McCotter,* 4 *C. E. Gr.* 533; *Spring* v. *Fisk,* 6 *C. E. Gr.* 179; *Griggs* v. *Landis,* 6 *C. E. Gr.* 515