## ELISHA M. FULTON

### *v.*

## JOHN GREACEN, JR.

A defendant claimed that a condition in a deed, which authorized his grantors to enter on complainant's lands and avoid a grant of a right to use certain water in case of the non-payment of the water rent, had been broken, and all of complainant's claim or right to the water thereby forfeited, and that therefore he was justified in cutting off or diverting the water from complainant's mill. The complainant claimed that, although the question whether it had been forfeited or not had not been settled at law, yet the defendant's deed contained a reference to the prior grant of the water under which complainant claimed, and therefore defendant had actual notice thereof; and further, that even if there might have been a forfeiture for want of prompt payment of the water rent, that the defendant or his grantors had waived that forfeiture by accepting such rent afterwards, and, further, that the injury to the mill by the diversion or deprivation of the water would be irreparable.—*Held,* that complainant was entitled to an injunction to prevent the threatened injury..

---

On order to show cause why injunction should not issue. Heard on bill and affidavits and answer and affidavits.

*Mr. Edward A. Day* and *Mr. John W. Taylor,* for complainant.

*Mr. Thomas N. McCarter,* for defendant.

Fulton *v.* Greacen.

VAN FLEET, V. C.

The complainant claims to be the owner of a tract of land adjoining the Morris canal, in the township of Bloomfield, Essex county, on which there is a paper-mill. He is operating the mill. Part of the power he employs is supplied by water from the canal. The water is carried by a raceway across the lands of the defendant. The object of this suit is to have the defendant restrained from diverting the water from the complainant's mill. The defendant, by his answer, admits that he has manifested an intention to divert the water, by having measurements made with a view of putting gates in the raceway, so that he may control the water. He claims the right to deprive the complainant of the water. There can be no doubt that the water constitutes a very valuable, if not an indispensable, part of the power by which the complainant's mill is driven. If it is cut off, it is evident the complainant must suffer a loss that may very properly be considered irreparable. The injury against which the complainant seeks protection belongs, undoubtedly, to the class which it is the duty of courts of equity to arrest *in limine.*

The defendant disputes the complainant's right to the water. The right to use the water for power was originally granted by the Morris Canal and Banking Company to one Unangst. This grant was made in 1858. Unangst subsequently, in 1861, conveyed his rights and privileges to Jonathan W. Potter; and Potter, on the 1st of December, 1865, made the conveyance or contract on which the complainant bases his title. On the date last named, Mr. Potter conveyed a part of the lands which Unangst had previously conveyed to him, to Robert W. Southmayd and Charles A. McCracken. It is not shown, nor is it alleged, that the complainant's mill stands on the land so conveyed by Potter to Southmayd and McCracken, but it does appear that the tract which he claims constitutes his mill property embraces other land than that conveyed by Potter to Southmayd and McCracken. By the grant made by Potter on the 1st day of December, 1865, he granted to Southmayd and McCracken, and to their heirs and assigns, the right to use and employ the water supplied by the canal company, after the same had passed

from the tail-race of his mill, as fully and beneficially as he was authorized to grant the same. An annual rent of $450 was reserved, to be paid in quarterly payments, and it was stipulated by the grantees that in case default should be made in the payment of any quarter's rent, for three months after the same became due, the grantor should have the right to cut off the water, and the grant should become void, and the grantor should have the right to grant the uses and privileges thereby granted to any other person or persons. The rights and privileges thus created were afterwards conveyed by Southmayd and McCracken to Archibald T. Finn. Finn, by a deed dated August 23d, 1870, but not acknowledged until August 14th, 1882, conveyed them to the Silver Spring Paper Company. This corporation was organized under the laws of the state of New York and became insolvent in 1874, and thereafter failed to pay the rent reserved by the grant under which the water was supplied, and continued in default for more than a year. Under proceedings instituted in this court, a receiver of the corporation was appointed in March, 1877, who subsequently, in 1882, sold and conveyed the mill property to the complainant. The rights and privileges in controversy were not specifically mentioned in the notice of the sale, nor were they expressly enumerated in any of the papers relating to the sale, as part of the property to be sold, but, at the time of the sale, the water constituted part of the power by which the mill was driven, and had been so used for a long time before. The complainant took possession of the mill, as the tenant of the Silver Spring Paper Company, in January, 1876, and continued in possession, either as tenant of the paper company or of its receiver, up to the time of his purchase.

Jonathan W. Potter conveyed the lands over which the water is carried to the complainant's mill, together with the rights and privileges granted to Unangst by the canal company, to the defendant, on the 9th of December, 1881. His deed expressly declares that the lands described in it are conveyed, subject to the agreement made by Potter with Southmayd and McCracken and the stipulations therein contained, and the grantor reserves any claim he may have for water furnished to the Silver Spring

Fulton v. Greacen.

company. All the rents which accrued between the time the complainant entered into possession, in January, 1876, and the date of the conveyance to the defendant, were paid by the complainant to Potter, and accepted by him. But since the defendant has been entitled to the rents he has refused to accept them. He claims that the default made by the paper company in 1874 effected a forfeiture of the grant, which he has a right to enforce. During the whole period the complainant has been in possession of the mill, whether he held it as tenant or owner, he has had the uninterrupted use of the water. During his occupancy the water has never been withheld or obstructed.

The defendant shows that the paper company, on the 4th of August, 1875, conveyed its mill property, without special mention, however, of the rights in controversy, to three trustees, upon trusts which required the trustees to hold the property conveyed for eight months and let the same, and apply the rents first to the payment of the expenses of the trust, and then to the payment of the debts of the corporation, and if at the end of that time the debts were not paid, to sell and convey the property, and apply the proceeds to the payment of its debts. It is alleged that the trustees took possession under the conveyance, but it is not alleged that they did anything further in execution of the power conferred by it. This summary, it is believed, exhibits all the facts material to the question now before the court.

The complainant's right to protection, by injunction, is resisted on the general ground that his title to the water in question is not clear. This objection is presented in two forms—first, it is said the complainant never had any legal title to the water; and second, if a good title was once held by the Silver Spring Paper Company, it was forfeited long before the complainant acquired his title.

It is undoubtedly true, as a general rule, that a person seeking to be protected in the enjoyment of real property by injunction must not only show a good title to the property, but also that he can only have adequate protection by an exercise of the prohibitory power of the court. He must show a good title to

the property and a clear right to the remedy he asks. But this rule is subject to exceptions. There are cases in which it is the duty of a court of equity to interpose for the protection of the property in dispute, pending the determination of a litigation concerning the legal title. In such cases the court does not take jurisdiction for the purpose of settling the rights of the parties, but simply to preserve the property until the legal title to it is established. When a complainant invokes judicial aid for such a purpose he is not required to show an uncontestable legal title, but he makes out a sufficient-case when he satisfies the court that his claim is a substantial one, and that there is reasonable ground for doubting the validity of the title of his adversary. He must also, of course, show a case of danger. The authorities supporting this doctrine will be found collected in the notes to *Kerr on Inj. 196, 197*.

The court is in the habit, in such cases, of comparing consequences, and whenever it is satisfied that, if it does not enjoin the defendant, it is probable the property, so far as the complainant is concerned, will be destroyed, it will not hesitate to exercise its power. In the words of Lord Cranworth, in *Shrewsbury and Chester R. R. Co.* v. *Shrewsbury and Birmingham R. R. Co., 1 Sim. (N. S.) 410,* " where the alternative is interference or probable destruction of the property, there, of course, the court will be ready to lend its immediate assistance, even at considerable risk that it may be encroaching on what may eventually turn out to be a legal right of the defendant." But the court will not interfere where the only injury likely to result to the complainant, if it refuses to act, is that he may be retarded or embarrassed in the litigation.

And in cases where the contest between the parties concerning the property in question is the fit subject of equity cognizance, and the complainant, when he comes for an injunction, also asks to have the disputed rights of the defendant and himself to the property in controversy settled, there, if a sufficient case of danger is shown, it is pre-eminently the duty of the court not only to prevent the destruction of the property, but to preserve it from injury, so that when it shall decide which of the parties is

Fulton v. Greacen.

entitled to it, it may deliver the property to him in as perfect condition as it was when the litigation commenced. In such cases this court is not only bound to decide which of the parties is entitled to the property, but to preserve the subject of the litigation until the question of right is decided. For a proposition so obvious precedents need not be cited.

The application of these principles to the case under consideration is obvious. The water which the defendant admits he has manifested an intention to divert, and which he claims he has a legal right to withhold, forms an essential, if not an indispensable, part of the power by which the complainant's mill is operated. It has been used constantly, for many years, as part of the complainant's power, and cannot be withheld or diverted without badly crippling his mill. If it is withdrawn, the producing capacity of his mill will be greatly diminished and its value seriously impaired. But no appreciable harm will be done to the defendant if he is enjoined. He does not intend to use the water. If he is permitted to withhold it from the complainant, it will be simply for the purpose of allowing it to go to waste. Under this state of facts the duty of the court is plain. This is a case in which almost ruinous consequences will result to one of the parties if the court refuses to exert its power, while the other, by its interference, can suffer nothing beyond a temporary restraint upon the exercise of a bare legal right.

The question whether the defendant has a right to enforce the forfeiture claimed, is, in my judgment, entirely free from difficulty. At common law, none but parties and privies in right and representation, as the heir of a natural person, and the successors of a corporation, could take advantage of the breach of a condition in a deed. Neither the assignees, nor the grantee of a reversion, nor privies in estate, as he to whom the remainder is limited, could re-enter for condition broken. *Co. Litt. 214 a.* This rule of the common law was, however, changed by an early statute, which gives the grantee of lands " let to lease " the same advantages by entry for non-payment of rent, that the lessor might have exercised. *Rev. p. 167 § 79.* The defendant

may therefore avail himself of a forfeiture which occurred ante-. cedent to his title.

The grant under consideration, it will be remembered, provides that if default shall be made in the payment of any quarter's rent, for three months after the same falls due, it shall become void, and the grantor shall have the right to cut off the water, and regrant the same to any other person. A default such as by the literal terms of the grant effected its forfeiture, is admitted. Equity does not favor forfeitures; on the contrary, one of its earliest and most salutary inventions was to provide a remedy against their harsh injustice. If the case is not marked by any countervailing equities, it is now the common practice for courts of equity to give relief against a right to re-enter for non-payment of rent, on payment of the rent in arrear. They do so on the theory that the clause of forfeiture is simply intended as a penalty to secure the payment of the rent, and if the lessor gets his rent, with interest and costs, he gets all he can, in justice, ask, and should not, therefore, be permitted to avoid the lease. *Kerr on Inj. 83 ; Thropp* v. *Field, 11 C. E. Gr. 82.*

But the complainant does not ask to be relieved, on equitable terms, from a forfeiture. He stands on higher ground. He insists that the lessor has, by his own act, extinguished any right of forfeiture which may at one time have existed. The fact is substantially undisputed that the lessor accepted rent, accrued subsequent to the forfeiture. The complainant swears to it, and there is nothing on the part of the defendant which can be regarded as an effectual denial.

The acceptance by a lessor of rent accrued subsequent to the . forfeiture, with notice of the breach on which the right of forfeiture rests, has, from a very early date, been held to be a waiver or extinguishment of the right of forfeiture. *Marsh* v. *Curteys, Cro. Eliz. 528 ; Harvie* v. *Oswel, Id. 572.*

The reasons for the rule were very forcibly stated by Lord Mansfield in *Goodright* v. *Davids, Cowp. 803.* He said : "Upon the breach of the condition, the landlord had a right to re-enter. He had full notice of the breach and does not take advantage of

Fulton *v.* Greacen.

it, but accepts rent subsequently accrued. That shows he meant the lease should continue. Cases of forfeiture are not favored in the law, and where the forfeiture is once waived, the court will not assist it." It has even been held that an absolute, un-qualified demand of rent, accrued subsequent to the forfeiture, amounts to an extinguishment of the forfeiture. Baron Parke so declared in *Nash* v. *Birch, 1 M. & W. 402,* and Baron Bramwell said the same thing in *Croft* v. *Lumley, 6 H. of L. Cas. 672;* and in *Dendy* v. *Nicholl, 4 C. B. (N. S.) 376,* it was held that bringing an action for rent, accrued subsequent to the forfeiture, was a waiver of the right of re-entry. Where the lease, in plain terms, provides that it shall be void, or be-come void, if the lessee fails to pay rent, or keep any other cove-nant, a breach does not render it *ipso facto* void, but merely gives the lessor a right to avoid it, which he may avail himself of or not, as he may choose to elect. A breach, in such case, renders the lease voidable, but not void, and if the lessor, with notice of the breach, afterwards accepts rent, which accrued sub-sequent to the breach, the law understands his acceptance as a decisive and final election not to avoid the lease, but that it shall be continued. *Arnsby* v. *Woodward, 6 Barn. & Cress. 519; Bowser* v. *Colby, 1 Hare 109; Gatehouse* v. *Rees, 4 Bing. N. C. 384.* So decisive is his election, as indicated by acts, that if he brings ejectment to recover the demised premises, he is pre-cluded, after service of the declaration in ejectment, from main-taining an action for rent accrued subsequent to the service of the declaration, on the ground that he has, by his own act, ended the term and avoided the lease, and therefore it is impossible that any rent can accrue under it. *Jones* v. *Carter, 15 M. & W. 718.*

On the facts now before the court, it is obvious that the for-feiture claimed has been extinguished. It is proper, I think, to remark, in order to indicate that the matter has not been over-looked, that, in my judgment, there is grave reason to doubt, even if it were conceded that no fact exists from which a waiver of the forfeiture could be decreed, whether the defendant is in a position which will permit him to take advantage of a forfeiture

Coddington v. Bispham.

incurred antecedent to his title. The conveyance which confers the rights on which he stands in this case was made subject, by express words, to the grant under which the complainant asserts title to the water in question. I think it may well be doubted, whether the defendant can now successfully claim that he is entitled to hold the lands acquired by that conveyance, free from a' burden which his deed recognizes, and which it says he shall take them subject to.

The complainant is entitled to an injunction, restraining the defendant from diverting the water from his mill.