On October 7th, 1925, Harry T. Davimos entered into a lease with Margaret B. Laird for premises on Clinton avenue, Newark. The eighth clause of the lease provides that after two years from its date it may be assigned. Before the expiration of the two-year period, Davimos assigned, without Mrs. Laird's consent, the lease to Harld Holding Company.
Under the terms of the lease, $1,000 was due on January 1st, 1927. The ninth clause of the lease provides:
"It is expressly understood and agreed by and between the parties hereto that if the rent above referred to or any part thereof shall be unpaid on the date when due by the terms hereof and remain so for a period of fifteen days after written notice shall have been sent by registered mail to lessee at his residence or place of business * * * then and in such case it shall and may be lawful at the option of the lessor to declare the said term ended and enter into the demised premises, and so forth." *Page 95 
The rent was not paid on January 1st. On January 3d Mrs. Laird sent her son to demand it. He was informed that the rent would not be paid until Mrs. Laird came to see Mr. Davimos to talk about certain changes or extensions in the lease. On January 4th Mrs. Laird sent her daughter to demand the rent. A similar answer was returned.
On January 11th Mrs. Laird's counsel wrote two letters to Mr. Davimos, one declining to alter the terms of the lease and the other calling attention to the ninth clause, and the right of re-entry after a period of fifteen days.
A check was not sent until January 31st, five days after the forfeiture period. Mr. Davimos explains this delay by saying he wanted to talk to Mrs. Laird about changing the lease and he had the check waiting for her when she called.
I do not think he had any right to compel Mrs. Laird to go to his office. He knew where she lived and could have gone to her. Neither did he have any right to refuse the check when demanded first by the son and then by the daughter.
Mr. Davimos says, further, that Mr. Grice told him on or about January 25th that he, Grice, was going away and nothing would be done about breaking the lease until a future conference. This Mr. Grice specifically by affidavit filed denies.
The bill is filed to enjoin Mrs. Laird from exercising her right under clause 9 and for temporary restraint. In the first place, I do not see what standing the complainant, Harld Holding Company, has in this court. It is an assignee taking in direct contradiction of the provisions of the lease.
In the case of Ye Old Staten Island, c., v. Barrett, c.,98 N.J. Eq. 702 (at p. 703), the court of errors and appeals held: "The material facts in the bill upon which complainant's equity depends are met by a full, explicit and circumstantial denial under oath. Such being the case, a preliminary injunction should not have been granted." This is the situation in the case at bar.
I think there is no doubt about the right of the landlord, under these circumstances, to re-enter.
36 Corp. Jur. 599: "Under an express provision in the lease the landlord may re-enter for non-panyment of rent, provided *Page 96 
a sufficient demand for payment has been made before entry." Numerous cases are cited.
Mr. Davimos says that he should not be deprived of the benefits of the lease because of a short delay in complying with its terms. It seems to me that one of the considerations moving Mrs. Laird to the execution of this lease was the assurance that she was to receive certain moneys at certain times. If the court is to allow money due on January 1st to be paid on January 31st, what assurance has she that the next payment will not be delayed two months, the next three months, and so on? This would be materially altering the terms of the lease and interfering with the intention of the parties clearly expressed at its execution.
Complainant cites Baldwin v. Van Vorst, 10 N.J. Eq. 577, as authority for his contention that this court will not enforce strictly clause 9 of this lease. On the contrary, I think this decision is directly against him. The opinion of Chancellor Williamson, unanimously affirmed by the court of errors and appeals, says:
"If the court grants this relief, the very object of the agreement will be defeated and this court virtually declare that the parties shall not make an agreement by which the length of credit shall depend upon the prompt payment of the interest, as it becomes due. The agreement is a reasonable one. A says to B, you may have my money for ten years, if you will pay the interest promptly. If you make default in this respect, you must pay me the principal. It cannot be said to be a rigid exercise of a legal right for A to refuse to extend the credit when he finds that he is defeated in his just expectation of receiving his interest money promptly. In 2 Story Eq. it is said: `The true foundation of the relief in equity in all these cases is, that as the penalty is designed as a mere security, if the party obtains his money he gets all that he expected and all that in justice he is entitled to.' In this case the penalty is not designed as a mere security, but its very object is to secure prompt payment. If the party does not get this he does not get what he expects or all that in justice he is entitled to. If this court could give such relief as would secure the faithful performance of the agreement *Page 97 
in future there might be a propriety in its interference. If the court could make a decree that the complainant should be relieved in the present instance upon the terms that for any further delinquency or forfeiture the further credit should be enforced, this would seem just; and yet, after all, it would be putting in the shape of a decree of this court the very agreement which the parties have made, and which the defendant now says is a rigid exercise of its legal rights to enforce."
I think the remarks of the chancellor in Benedict v. Lynch,1 J.C.R. 376, very applicable to a case like this. The notion that seems too much to prevail (and of which the facts in the present case furnished example), that a party may be utterly regardless of his stipulated payments, and that a court of chancery will almost at any time relieve him from the penalty of his gross negligence is very injurious to good morals, to a lively sense of obligation, to the sanctity of contract, and to the character of this court. It would be against all my impressions of the principles of equity to help those who show no equitable title to relief.
"* * * I can see no principle of equity to justify the court's interference to give defendant relief against the forfeiture."
This opinion has been quoted with approval in many subsequent cases.
Complainant cites the following extract from the opinion: "Equity prevents a forfeiture of a lease where a right of re-entry is stipulated in case rent isn't paid if it is afterwards paid on the ground that right of re-entry is intended as a mere security for the payment of rent and when rent is paid the end is attained."
I cannot find any such quotation in the opinion. The case does not deal with leases, but with payments on a bond. It may be that counsel has attempted to paraphrase for his own advantage adictum on page 585 without giving the actual quotation, and the chancellor's comments, which follow, or, perhaps, he does not appreciate the full significance of the whole opinion. He also quotes from Griggs v. Landis, *Page 98 21 N.J. Eq. 494 (at p. 502), as follows: "Penalties, forfeitures and re-entries for conditions broken are not favored in equity and are usually held to be securities for payment of moneys and performance of conditions, and where payment can be made equity will relieve against rigid enforcement on the contract on the general principle that a court of equity is a court of conscience and will permit nothing to be done within its jurisdiction which is unconscionable." This is not correctly quoted.
He, moreover, neglects to call the court's attention to the next succeeding paragraph, which reads as follows: "But it is not therefore to be supposed that a court of equity will lightly dispense with contracts made between competent parties, and substitute other agreements more in accordance with variable rules of right and conscience. Every presumption will be made in favor of such contracts, and they will be enforced according to the intention of the parties expressed and implied, unless it can be shown that thereby some hardship or wrong, not within the presumed contemplation of the parties at the time, will result from such enforcement."
Finally, this case has no bearing on the one at bar and was decided on a point entirely distinct from the one here.
There the court held that complainant had done acts inconsistent with the supposition that he continued to hold his opponent strictly to his part of the agreement and had therefore waived his right to insist on a forfeiture.
It seems almost unnecessary to say that when counsel reproduce extracts from decisions in their briefs, they should state them with meticulous accuracy, without paraphrase or omission. Any other course is a waste of time on the part of counsel, an attempted imposition on the court and a needless drain on judicial time and temper. See Lask v. Bedel, 91 N.J. Eq. 341
(at p. 345).
 I will advise a decree denying the preliminary injunction. *Page 99