This bill is filed by complainant to restrain a suit at law instituted by defendant to oust complainant from premises 921 Broad street, Newark, and to forfeit a lease heretofore entered into between them.
Two of the questions argued by counsel in the case, as far as this court is concerned, have been disposed of by Vice-Chancellor Berry in a memorandum filed by him on the return day of the order to show cause for a preliminary injunction, i.e., the jurisdiction of this court to prevent unjust forfeiture, and adequacy of the remedy at law. The learned vice-chancellor continued the preliminary injunction until final hearing because of the irreparable damage that could result from a refusal. He then continues: "The jurisdiction of the court of chancery to prevent unjust forfeiture in matters of this kind cannot be questioned and it is not necessary to cite any authorities on this point. Their number is legion. While it is quite possible that there may be a defense to the suit at law under a proper construction of subsection N of section 5 of the lease, the remedy in equity is undoubtedly more complete."
I shall therefore consider those points as settled and proceed to a discussion of the lease itself and the circumstances leading up to this suit.
On March 4th, 1922, defendant, whom I shall for convenience hereafter designate as Lawerence, leased the premises to the complainant Sparks. As finally amended the lease was to run for twenty-one years, and the rental was to be in monthly installments of $848.33. Upon the execution of the lease complainant deposited as security therefor $5,000. Of this defendant still holds $3,000.
The clause in the lease, which is important in the determination of this case, reads as follows: *Page 20 
"That upon a breach by the tenant of any of the covenants herein provided to be kept and performed by him and failure to fully perform and comply therewith within thirty [30] days after the receipt of written notice from the landlord delivered to the demised premises, the tenant shall at the option of the landlord forfeit said term and all rights thereunder and the landlord may re-enter and recover immediate possession of said premises, and shall also have an action for all damages arising from any such breach or breaches. The failure of the landlord to exact a forfeiture for any breach or breaches hereof by the tenant shall not be deemed or construed as a waiver of the right of the landlord to exact a forfeiture for any subsequent breach or breaches by the tenant; no notice, however, shall be required of the non-payment of any of the above-mentioned installments of rent, which are due and payable on the first business day of each and every month, respectively; and in the event that dispossess proceedings be instituted either for a breach of any covenant or condition herein contained or for defaulting in payment of rent and the landlord shall repossess himself of said premises, the tenant shall nevertheless continue to be liable for any deficiency in the rentals herein reserved for the unexpired term thereby granted."
Complainant spent $12,000 in improving the property and expended also $60,000 in preparing it for store purposes, putting in furniture, store fixtures, c.
On January 15th, 1929, the January installment of rent being unpaid, defendant served on complainant a notice which purported to terminate the lease, on the ground and only on the ground that the January rent had not been paid. Defendant admits in his answer that this is the only ground for termination. Immediately on receipt of the notice complainant went to the office of defendant and tendered the rent to defendant's secretary, who has charge of his rent collections. Acceptance was refused. On January 16th, complainant went to defendant's office and tendered to defendant, in legal tender, the rent with $3 additional as interest from January 1st to that date. This was refused. Dispossess proceedings were then instituted at law by defendant. From the beginning of the term to the time of serving notice the rent was paid irregularly usually in two or more installments. Defendant sometimes took notes in lieu of cash, which notes were later paid by complainant. Complainant says that he and Mr. Lawerence were on very friendly terms and Mr. Lawerence never made any serious objection to his delay in *Page 21 
making payment after the first of each month. There is no dispute about the fact that on June 17th, 1927, Mr. Sparks received a letter from Lawerence, written and signed by Lawerence's secretary, which said: "Beginning July 1st Mr. Lawerence insists that the rents be paid the first of each month." It is to be observed that this letter contains no notice to quit on failure to pay and no notice of forfeiture. It also should be noted that Lawerence continued to receive without protest, the rent at irregular intervals for a year and a half after the letter was written. This corroborates Spark's testimony that as soon as he received the letter he called Lawerence, and Lawerence told him that it would be all right as long as Sparks paid sometime during the month. Sparks also says that Lawerence never demanded the January rent and that he first knew of Lawerence's decision not to continue further the usual method of making payments any time during the month when the notice to dispossess was served. Lawerence and his secretary say that they never willingly acquiesced in the delayed payments, repeatedly protested against it, and Lawerence says that on January 2d he made a demand for the rent personally.
This is a brief outline of the testimony on both sides. It is clearly inconsistent and I base my conclusions in the first place on the character of the witnesses and their attitude on the stand. Sparks was clear and straightforward, unshaken by cross-examination and borne out by what little corroboration he could produce. Lawerence, on the contrary, was evasive, self-contradictory and, I believe, untruthful. The character of his testimony can be illustrated by the following quotation:
"Every time I went for the rent he say he kick me in the jaw and I get kind of disgusted, and don't want to come any more." And again when confronted with and asked to explain a direct contradiction in his testimony, the record reads, "A. Well — witness mumbles something unintelligible."
But more important still is his flat contradiction of himself as to the alleged demand of January 2d. In the same month in which the alleged demand was said to have been *Page 22 
made Lawerence swore in an affidavit that it was made over the telephone.
On the witness-stand he swore he made the demand personally in the store. He also swore in his affidavit that Sparks said he "would pay sometime this month." On the witness-stand he testified Sparks said he "would pay in a few days," and so he began proceedings on January 15th. These discrepancies utterly unexplained on a point of such importance in the case lead me to place no value on any of Lawerence's testimony. I believe Mr. Sparks when he swears he received no notice save the one to dispossess. In this moreover, he is in part at least corroborated by his clerks in the store, who swear that Lawerence neither came to the store or telephoned on January 2d.
Breach of a covenant to pay rent does not, in the absence of a proper stipulation to that effect, entitle the landlord to declare the term ended and the lease forfeited. In such case the landlord has two, and only two, remedies, viz.: (1) to sue the tenant for the rent (which does not disturb the tenant's possession), or (2) to institute the statutory proceedings to dispossess the tenant for non-payment of rent, in which event the tenant may come in and pay the rent and dismiss the proceedings.
"The mere breach of the covenant can give the landlord no right of re-entry, unless there be a stipulation in the lease that such a breach of covenant shall work a forfeiture or determination of the tenant's interest. No ejectment can be maintained by the landlord for a mere breach of covenant not coupled with a proviso for re-entry. His only remedy would be an action for breach of covenant. * * * The mere fact that the covenants of the lease were violated by the tenant * * * by non-payment of rent, gives the landlord no right of re-entry, except in the mode or under the circumstances particularly prescribed by the statute for non-payment of rent." Den, ex dem. Bockover v. Post
(Chief-Justice Green, Sup. Ct. 1855), 25 N.J. Law 285 (at p.292), approved and quoted by the court of errors and appeals inOcean Grove Assn. v. Sanders, 68 N.J. Law 631 (at p. 637). *Page 23 
There must be an express stipulation in the lease that on failure to pay rent on the due day the landlord can forfeit the lease without demand for rent.
The only forfeiture or re-entry clause in the lease is that which is contained in the first sentence. It requires default to continue for thirty days.
Then, in a new sentence, is a non-waiver provision and following a semicolon after the non-waiver provision are the words upon which the landlord relies, viz.:
"No notice, however, shall be required of the non-payment of any of the above-mentioned installments of rent, which are due and payable on the first business day of each and every month, respectively."
Those words say that no notice of the non-payment of rent shall be required, but they say nothing about a right of re-entry or termination in the event of non-payment. To make them mean what the defendant contends, it is necessary to imply and readinto the lease words which are not there, to wit (after the words last above quoted) the words "and if not paid when due the landlord shall have the right to declare the term ended and the lease forfeited."
Courts always endeavor to avoid a forfeiture, and in construing a lease will, if possible, construe it against the one seeking a forfeiture.
In the leading case of Kansas City Elevator Co. v. UnionP.R.R. Co. (1881), 3 McCrary 463; 17 Fed. Rep. 200, the court said:
"As a proposition pervading this doctrine of the right of re-entry by the forfeiture of a lease of land, it is to be observed that the power to be exercised is a very strong power, and it is one which is exercised without the judgment of a court of justice or of anybody else but the party who is exercising it. The party determines for himself whether he has the right of re-entry, without any resort to a court of justice. This is always a harsh power. It has always been considered that it wasnecessary to restrict it to the most technical limits of theterms and conditions upon which the right is to be *Page 24 exercised. Hence it is that the old common law provided in this class of contracts that it was the duty of the court to see that no injustice was done. It is reasonable, it is natural, that when a contract puts it into the power of one man to say that under certain contingencies, of which he is to be the judge, he shall enter upon the house, or home, or property of another, and eject him instantly, and take possession — it is reasonable, it is proper, that the contract and the acts which justify such acourse of conduct should be construed rigidly against theexercise of the right. A court of equity, when necessary, when this power has been exercised, will come in and afford relief."
It is contended that the words "no notice, however, shall be required of the non-payment of any of the above-mentioned installments of rent which are due and payable on the first business day of each and every month, respectively" refer back to the thirty-day notice mentioned in the first part of the paragraph. I do not think so. They are part of an entirely new sentence, and there is nothing to indicate that they were intended to have any bearing on the landlord's right of re-entry. They merely mean, as I read the clause, that the landlord shall not be obliged to notify the tenant of non-payment of rent. Even if the words in question are referred back to the first sentence the result is the same as far as defendant is concerned. The first sentence makes the right of re-entry conditioned upon the tenant's breach of any covenant "and failure to fully perform and comply therewith within thirty days after the receipt of a written notice." If the portion I have quoted relates back to the first sentence so as to eliminate therefrom the requirement of notice, the result is that the words "after written notice" are eliminated and the landlord's right of re-entry is left conditioned upon the tenant's breach of the covenant to pay rent "and failure to fully perform and comply therewith within thirty days;" that is, within thirty days after the due date instead of thirty days after receipt of notice. The rent was tendered and refused on the thirteenth day after its due date and on the same day the written notice was received. *Page 25 
I believe, therefore, that there is no right of re-entry stipulated in the lease, unless the tenant shall fail to perform within thirty days. Whether it be thirty days from receipt of notice or thirty days from date of default makes no difference because the condition that might entitle the landlord to a forfeiture does not exist in this case. Moreover, it will be observed that the notice of termination served by the landlord on January 13th does not quote the re-entry clause of the lease as it is written. It omits from it the words "and failure to fully perform and comply therewith within thirty days."
Under all the circumstances above enumerated, I believe complainant is entitled to the relief he seeks. On the supposition that he was to have the property as the lease provided, he expended a very large sum on it, counting, doubtless, on the long term. He was led to believe by the landlord that he could pay his rent any time during the month, and the landlord repeatedly accepted it after the due day — sometimes taking notes for it. Moreover, the legal construction defendant seeks to give to the disputed clause in the lease is, to say the least, so strained that I do not feel justified in adopting it in the face of the overwhelming weight of authority to the effect that in cases of attempted forfeiture the court will construe the contract and the acts which justify such a course of conduct rigidly against the exercise of the right, as was held in Kansas City Elevator Co. v. Union P.R.R. Co.,supra.
There are many cases to this effect upon our books. I shall refer only to a few.
In Thropp v. Field, 26 N.J. Eq. 82, the court said:
"The complainants appear not to have observed strictly the provision of the lease as to payments of the rent * * *. The bill alleges that the rent has, from the commencement of the term, been paid at irregular intervals, sometimes once a month and sometimes once in two months; that the defendant never strictly enforced the covenant for payment of the rent according to the terms of the lease, and that the last payment was made sometime in May last, and was in full *Page 26 
to the first of that month. It further states that since that payment the defendant has never either demanded or requested payment of the rent. The defendant, by his answer, admits that sometimes the payment went over to the following month, or was paid by promissory note, but alleges that he remonstrated, at different times, with the complainants against such delay, and claimed that they had forfeited their lease. * * * If the defendant, by his acquiescence, induced the complainants to believe that strict observance of their covenant to pay their rent was not required by him, it is inequitable in him, under the circumstances, to seek to enforce the forfeiture. Besides, full compensation can be made to the defendant for the failure of which he complains, and under such circumstances equity will relieve." Citing Story Eq. Jur. ¶¶ 1314, 1315; Tayl. Land T. ¶ 495; Atkins v. Chilson, 11 Metc. 112.
Mr. Justice Scudder, in delivering the opinion of the court of errors and appeals, in Grigg v. Landis, 21 N.J. Eq. 494,
quoted the following with approval:
"The result of all the cases on this subject seems to be that slight circumstances are sufficient in a court of equity to prevent a party from taking the benefit of such stipulation, and that whenever a party has done any act inconsistent with the supposition that he continues to hold his opponent strictly to his part of the agreement, he is taken to have waived it altogether." Citing Hipwell v. Knight, 1 Younge C. 401;Seton v. Slade, 7 Ves. Jr. 265, and notes; 3 Lead. Cas. Eq.49.
In an annotation in 16 A.L.R. 443, under the heading "Acquiescence of the lessor in irregular payments," the following is found:
"When a landlord, by a course of dealing in accepting overdue rent, has put a tenant off his guard, a forfeiture of the lease for a delayed payment of rent cannot be enforced, unless notice has been given to the tenant calling on him for a compliance with the strict terms of the lease; and equity will relieve from such a forfeiture." *Page 27 
Numerous cases are cited in said note. In Fleming v. FlemingHotel Co., 69 N.J. Eq. 715, the court held:
"It is well settled that the clause of re-entry is mainly inserted for the landlord's security, and will not be enforced when the lessee, upon proper demand, satisfies the rent due and compensates the landlord for any damages he may have sustained because of a breach of the covenant, and a court of equity would protect a defendant where the breach results from the neglect to pay money, the interest upon which can readily be calculated and the landlord thereby compensated for the inconvenience sustained because of the payment withheld."
And in Fulton v. Greacen, 36 N.J. Eq. 216, Vice-Chancellor Van Fleet said:
"A default such as by the literal terms of the grant effected its forfeiture, is admitted. Equity does not favor forfeitures; on the contrary, one of its earliest and most salutary inventions was to provide a remedy against harsh injustice. If the case is not marked by any countervailing equities, it is now the common practice for courts of equity to give relief against a right to re-enter for non-payment of rent, on payment of the rent in arrear. They do so on the theory that the clause of forfeiture is simply intended as a penalty to secure the payment of the rent, and if the lessor gets his rent, with interest and costs, he gets all he can, in justice, ask, and should not, therefore, be permitted to void the lease." Kerr Inj. 83; Thropp v. Field,11 C.E. Gr. 82.
The case of Harld Holding Co. v. Laird, 101 N.J. Eq. 94,
decided by me and affirmed by the court of errors and appeals, has been cited as sustaining defendant's contention. It is, however, readily distinguishable from the case at bar. In theLaird Case the forfeiture was conditioned upon the rent remaining unpaid "for a period of fifteen days after written notice." It was sustained because the required notice had been given and forfeiture had not been declared until after the fifteen-day period had expired. As I have stated, such is not the situation in the case at bar. In the Laird Case, at least two demands for rent were made. In the *Page 28 
present case, none. In the Laird Case the rent was not tendered until five days after the forfeiture period. In the present case, immediately on receipt of notice to dispossess, the rent was tendered and refused. In the Laird Case the tenant refused to pay the rent. That was not the situation in the present case, but the fact as I have found it was that landlord told tenant he could pay any time during the month.
I will advise a decree according to the prayer of complainant's bill directing the acceptance of the rent by defendant with proper interest and permanently restraining defendant from dispossessing the complainant and forfeiting the lease for failure to pay on the 1st of January the rent in question. *Page 29